R. B. ASHLEY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–73–150.

Court of Criminal Appeals of Oklahoma.

April 10, 1974.

Rehearing Denied April 10, 1974.

Harold Hall, Ada, for appellant.

Larry Derryberry, Atty. Gen., Robert McDonald, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Presiding Judge:

In the District Court, Pontotoc County, Case No. CRF–71–152, appellant, R. B. Ashley, hereinafter referred to as defendant, was charged, tried and convicted for the offense of Larceny of Domestic Animals. His punishment was fixed at four (4) years imprisonment. From that judgment and sentence, he has perfected his timely appeal to this Court.

The evidence adduced at trial involved the testimony of sixteen witnesses. The State's first witness, Hershel Brewer, testified that on November 4, 1971, he was employed as a pasture rider for Winrock Farms. On this date, an inspection of the herd revealed thirty-three head of cattle were missing. After determining the cattle to be missing, Brewer investigated the area and his investigation revealed two sets of unusual tire marks nearby and some reddish-brown paint traces on the loading shoot on that property. Brewer testified that on November 11, 1971, he observed and identified some of these cattle on pasture land located in Oklahoma County. Brewer identified State's Exhibits 1–6 as photographs of those calves he was able to identify at that time. Further, he noted the lower one-half of each of the calves ears had been removed in an apparent attempt to destroy registration numbers.

Dr. G. T. Easley testified he was the Winrock Farms veterinarian at the time these cattle were taken. In addition to corroborating Brewer's testimony, Easley stated each of the cattle removed from the property was registered and had four digit registration numbers tatooed in its ears. On November 11, while on pasture property located in Oklahoma County, Easley observed and identified the thirty-three head of cattle found in Oklahoma County to be those cattle removed from the Winrock Farms. Further, Easley's testimony revealed the specific details upon which he made this identification.

Codefendant James Mooney testified that on the evening of November 3, 1971, he received a call from defendant requesting him to bring a trailer and meet him south of Roff, Oklahoma. Mooney stated he had defendant's goose-neck trailer which he hooked up to his own white Chevrolet pick-up and met the defendant at the designated location. Upon meeting defendant at the location, Mooney observed that defendant was driving a red pick-up, pulling a goose-necked trailer. The pair then drove from that location to the scene in

defendant's pick-up. After arriving at the scene, they removed the gate hinges, entered the property, and corralled approximately thirty-three heifers. Thereafter, they drove to their meeting place, reattached the trailer to defendant's pick-up, and proceeded back to the corral. Upon arrival they loaded both trailer and left the scene. While enroute from the Winrock property, they drove through Sulphur, Oklahoma, at approximately midnight that same night. At approximately 1:00 a. m. on the 4th of November, they stopped at Ruby's Truck-Stop on Highway 77, a short distance from Purcell, Oklahoma. At this truck-stop they filled their pick-ups with gasoline and stopped to eat in the truck-stop restaurant. After the truck-stop attendant informed Mooney that he was unable to repair a flat tire on the trailer he was pulling, Mooney and defendant drove to a Texaco Service Station located in the northern part of Purcell. After the flat was repaired, the pair drove to the above mentioned property located near Edmond in Oklahoma County and unloaded the cattle. On the following day they returned, dehorned the cattle, and removed the lower portion of the ears of each calf.

Mr. M. L. McClain testified he leased eighty acres of land located in the northern part of Oklahoma County to James Mooney. He testified he later observed the above mentioned cattle on the property.

Bill Martin testified that in November of 1971 he was employed as a service station attendant at Ruby's Truck-Stop, previously mentioned herein. Martin testified that in the early part of November, two individuals drove into the service station driving separate pick-ups and pulling trailers loaded with cattle. Martin stated he repaired a gas filter on one pick-up, but was unable to change the flat tire on one of the trailers as he did not have the proper equipment. He directed the driver to the Texaco Service Station located in Purcell. Finally, Martin testified he was unable to identify the defendant as one of the drivers.

Larry Don Eager testified he lived approximately one-fourth of a mile north and one-fourth of a mile east of the Winrock Farms. At approximately 11:00 to 11:30 p. m. on November 3, 1971, he observed two pick-up trucks pulling trailers loaded with cattle. Both trucks were proceeding from the direction of the Winrock Farms. Eager identified one of the trailers as a goose-neck trailer and observed it was a brownish-red color. However, he was unable to describe the other trailer.

Kenneth Winters testified in early November defendant borrowed from him a white over reddish-orange trailer.

Joe Raimer testified that during the month of November he was employed as a policeman with the city of Sulphur, Oklahoma. On the evening of the 3rd of November, he observed the above mentioned pick-ups pulling trailers pass through the Sulphur city limits. Raimer testified that he recognized James Mooney as the driver of the white pick-up, but was unable to recognize the other driver.

Betty A. Taylor testified that on November 4, 1971, she worked as a cook at Ruby's Truck-Stop. At approximately 1:30 a. m. that date she observed defendant and codefendant Mooney eating together in the restaurant.

Albert Landsale testified he was employed in early November of 1971 at Bill's Texaco Service Station located in Purcell, Oklahoma. At approximately 2:00 to 3:00 a. m. two men driving two separate pick-ups pulling trailers loaded with cattle, drove into the station. He repaired a flat tire on the trailer that codefendant Mooney was driving. He identified the defendant as the driver of the other pick-up.

Burl Griffin and Kenneth Orsborn, Pontotoc County Sheriff and Deputy Sheriff, removed paint samples from the gate of the corral located at the Winrock Farms on the pasture land where these cattle were taken. Orsborn identified State's Exhibit 14 as being the paint samples which he removed from the gate. He identified

State's Exhibit 15 as paint samples removed from the Winters' trailer.

Bob Felton, Winrock Farms Manager, testified that he gave no one permission to remove the cattle from the premises.

William J. Caveny, Oklahoma State Bureau of Investigation Chemist, testified that State's Exhibits 14 and 15 were determined from his tests to be comparable with no distinguishable differences between the samples.

James Mooney was again recalled to testify and testified State's Exhibit 19, a check for $100 with defendant as drawer of the instrument, was cashed and the money was used to pay the first month's rental on the leased property.

Thereafter the State rested.

Thereafter the defense rested without presentation of evidence.

■ Defense counsel argues in his first proposition that the trial judge abused his discretion in not granting a continuance on the basis of adverse pretrial publicity. In the case of Shapard v. State, Okl. Cr., 437 P.2d 565 (1967), this Court adopted the language of United States v. Hoffa, 156 F.Supp. 495 (S.D.N.Y.1957), which states as follows:

"Where there has been widespread adverse pre-trial publicity about defendant, proper procedure in vast majority of cases is not to postpone the trial indefinitely or for substantial period of time, but to proceed to trial and to determine upon voir dire of panel and individual talesmen whether fair and impartial jury can be selected."

In the instant case the voir dire examination is not designated as a part of the record. In Griffin v. State, Okl.Cr., 453 P.2d 278 (1969), this Court stated as follows:

"It is also noted that the voir dire of the jury has not been preserved in the record and forwarded to this Court in order that it may be reviewed to determine whether or not the jury was prejudiced by virtue of new articles concerning defense counsel's contempt citation. Therefore, it would appear that it was a matter within the trial court's sound discretion as to whether or not a continuance was justified."

It appears from the above authority that in both of the above cited cases, the question of whether a change of venue or continuance should be granted upon the assertion of adverse pretrial publicity is addressed to the sound discretion of the trial court. In the instant case, as in *Griffin*, supra, the voir dire proceedings are not a part of the record. Consequently, there is nothing in the record which supports the defendant's argument that he was prejudiced by adverse pretrial publicity and no basis for this Court to evaluate whether the jury which was impaneled was a fair and impartial one. Consequently, the record does not support counsel's argument that the jury was not a fair and impartial jury nor does it support the conclusion that the trial judge abused his discretion in allowing the trial to proceed.

■ Defense counsel next argues that the evidence is insufficient to corroborate the testimony of the defendant's accomplice. We find this contention to be without merit. The trial record, as noted by the opinion's lengthy statement of facts, is replete with corroboration of the accomplice's testimony. See Box v. State, Okl.Cr., 506 P.2d 969 (1973). We, therefore, find this proposition to be without merit.

■ Defense counsel next argues that the trial court erred in allowing James Mooney to testify over objections of the defendant as Mooney was not endorsed on the Information as a witness. In this regard we note in a non-capital case the defendant is charged with notice that a co-defendant may testify against him at trial and it is unnecessary to have his name endorsed on the Information as a witness. See Varner v. State, 42 Okl.Cr. 42, 274 P. 43 (1929). We, therefore, find this proposition to be without merit.

■ In defense counsel's final proposition, he urges the court erred in allowing

William Caveny, the Oklahoma State Bureau of Investigation Chemist, to testify concerning results of tests which he performed in regard to State's Exhibits 14 and 15. This proposition of defendant is not supported by citations of authority. We have previously held that it is necessary for defendant not only to assert error, but to support his contentions by citations and authority. When it is not done, and it is apparent that the defendant has not been deprived of any fundamental rights, this Court has refused to search the books for authority to support the mere assertion that the trial court was in error. Sandefur v. State, Okl.Cr., 461 P.2d 954 (1969). We, therefore, find this proposition to be without merit.

The judgment and sentence is affirmed.

BRETT, and BUSSEY, JJ., concur.